IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENDELL CHARLES FOSTER, | ) | |
| Plaintiff | ) | C.A. No. 13-66 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MICHAEL HOLMAN, et al., | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

# OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter

## I. INTRODUCTION

### A. Relevant Procedural and Factual History

Plaintiff Kendell Charles Foster, a prisoner incarcerated at the Erie County Prison ("ECP") in Erie, Pennsylvania, instituted this *pro se* civil rights action on March 5, 2013, pursuant to 42 U.S.C. § 1983. Named as Defendants are Michael Holman, Deputy Warden at ECP ("Holman"), and the Medical Department at ECP ("Medical").

In his *pro se* complaint, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. In particular, Plaintiff alleges that on December 22, 2012, he was transported to ECP after having received a gunshot wound to his right leg. (ECF No. 3, Complaint, at p. 4). Plaintiff complains that Defendant

---

[1] **Error! Main Document Only.** The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 4, 16, 17].

Medical only gave him pain medication and did not provide any antibiotics until December 29, 2012. (Id.). As a result, Plaintiff alleges that his wound took longer to heal, which caused him to be placed on double lockdown status, with no exercise and limited showers and phone access. (Id. at pp. 4-5). In addition, Plaintiff claims that his Fourteenth Amendment due process rights were violated on January 8, 2013, when he was prevented from visiting with family and friends one day after "foxtrot pod" was locked down due to an inmate disturbance. (Id. at p. 6). As relief for his claims, Plaintiff seeks to recover monetary damages of $ 250,000.00.

Defendants have each filed a motion to dismiss Plaintiff's complaint arguing, *inter alia*, that Plaintiff has failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act. [ECF Nos. 9 and 13]. Plaintiff has since filed a response to each of Defendants' motions [ECF Nos. 12 and 19]. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly

analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit Court prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of

3

> truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

4

### C. Exhaustion

#### 1. The Exhaustion Requirement

Defendants argue that Plaintiff's claims should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until *such administrative remedies as are available* are exhausted.

Id[2] (emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished

---

[2] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

5

Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[4]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps

---

3

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

4

There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2. The Administrative Process Available to Erie County Inmates

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

ECP's Inmate Manual, which was provided to Plaintiff at the time of commitment, outlines the grievance procedure inmates are required to follow. (See ECF No. 27-3). First, an inmate desiring to file a formal grievance must submit a written grievance form to the pod counselor within fifteen (15) days after a "potentially grievable event has occurred." (ECF No. 27-3 at p. 3 (internal p. 32)). The grievance is then submitted to the Warden's designee for investigation and response. In the event the grievance is not resolved, the inmate may file an appeal to the Warden within five (5) days of his receipt of the response from the Warden's designee. (Id.). The Warden will then issue a final decision affirming, modifying, suspending or reversing the grievance response. (Id.).

### **3.** **Analysis**

In support of his motion to dismiss, Defendant Holman has submitted his own Affidavit [ECF No. 9-1], in which he makes the following pertinent declarations:

2. In my capacity as Deputy Warden of the Erie County Prison, I have access to all prison records regarding inmates, their medical care and treatment, misconducts and other incidents in which they are involved, grievances they file, responses to grievances, and all other records regarding each inmates incarceration at the Erie County Prison.
(ECF No. 9-1 at ¶ 2);

3. I have reviewed the prison records of [Plaintiff] with respect to his commitment at the Erie County Prison between December 22, 2012 and the present. (Id. at ¶ 3);

\*           \*           \*

15. On January 3, 2013, [Plaintiff] filed Grievance No. 1493 in which he Complained that he wasn't allowed any exercise or recreation until January 1, 2013 and then was only allowed one hour of recreation occurring at 2:00 a.m. (Id. at ¶ 15).

16. Deputy Warden Michael Holman filed a response to Grievance No. 1493 on January 15, 2013 denying the grievance…. (Id. at ¶ 16).

17. [Plaintiff] did not file an appeal from the denial of Grievance No. 1493. (Id. at ¶ 17).

18. On January 3, 2013, [Plaintiff] also filed Grievance No. 1494 in which he complained that he was not given antibiotics until December 29, 2012 and that, as a result, his gunshot wounds took no longer to heal. [Plaintiff] also complained that the longer healing process caused him to be locked down with no recreation time and limited access to phone calls. (Id. at ¶ 18).

19. On or about January 15, 2013, Deputy Warden Michael Holman filed a response to Grievance No. 1494 in which the grievance was denied… (Id. at ¶ 19).

20. [Plaintiff] did not file an appeal with respect to the denial of Grievance

No. 1494. (Id. at ¶ 20).

21. On or about January 11, 2013, [Plaintiff] submitted Grievance No. 1496 in which he alleged that on January 8, 2013, he was denied a visit with his family and friends and that there were no written reasons given for the denial…. (Id. at ¶ 21).

22. On January 16, 2013, Deputy Warden Michael Holman provided [Plaintiff] with a response denying Grievance no. 1496…. (Id. at ¶ 22).

23. [Plaintiff] did not file an appeal regarding the denial of Grievance No. 1496. (Id. at ¶ 23).

\*            \*            \*

26. I certify that I have reviewed the records of the Erie County Prison with respect to [Plaintiff's] incarceration and [Plaintiff] did not file an appeal with respect to the denial of the above-referenced grievances under the prison's grievance procedure. (Id. at ¶ 26).

The above declarations of Defendant Holman have not been contradicted, in any way, by Plaintiff; Plaintiff merely states that he attempted to appeal Grievance Nos. 1493 and 1494 but was unable to get the appeals filed in time "due to the process." However, Plaintiff's statement in this regard is unsubstantiated by any records indicating that appeals were, in fact, filed but rejected as untimely. Apparently, Plaintiff simply chose not to file them. In view of the record, the Court finds that Plaintiff has failed to exhaust his administrative remedies with regard to the claims he seeks to raise in this case, and this case will be dismissed accordingly.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| KENDELL CHARLES FOSTER, | ) | |
|---|---|---|
| Plaintiff | ) | C.A. No. 13-66 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MICHAEL HOLMAN, et al., | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## **ORDER**

AND NOW this 5th day of November, 2013,

IT IS HEREBY ORDERED that Defendants' motion to dismiss complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED and this case is DISMISSED.

The Clerk is directed to mark this case closed.

*/s/ Susan Paradise Baxter*
SUSAN PARADISE BAXTER
United States Magistrate Judge